J-A09012-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
ROY JOHNSON :
:
Appellant : No. 231 WDA 2023

Appeal from the Judgment of Sentence Entered November 7, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0001539-2019

BEFORE: DUBOW, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY DUBOW, J.: **FILED: MAY 16, 2024**

Appellant, Roy Johnson, appeals from the Judgment of Sentence entered in the Allegheny County Court of Common Pleas following his convictions after a bench trial of Criminal Attempt—Homicide and Aggravated Assault.[1] Appellant challenges the sufficiency of the evidence and the legality of his sentence. After careful review, we affirm Appellant's convictions but vacate the judgment of sentence imposed for his Aggravated Assault conviction.

**A.**

The relevant factual and procedural history is as follows. On the night of January 6, 2019, Victim met Regina Pehm and Carolyn Ketter for the first time at Images, a bar in downtown Pittsburgh, and he went with them to an

---

[1] 18 Pa.C.S. § 901(a) and § 2702(a)(1), respectively.

after-hours club. When leaving the club at around 2:00 AM, Ms. Ketter returned to Images while Ms. Pehm stayed behind. Victim followed Ms. Ketter. He was walking quickly, looking at his phone, and called out "Yo, C" to Ms. Ketter. N.T. Trial, 4/12/22, at 126.

While walking, Victim looked up from his phone and saw Appellant. The two did not know each other or exchange any words. Appellant shot Victim 5 times from 3 to 5 feet away—first in the chest then twice in the back and once each in the pelvis and shoulder. Appellant then left the scene. Victim sustained serious injuries.

Following an investigation, police arrested Appellant on January 17, 2019, and charged him with Attempted Murder, Aggravated Assault, and Recklessly Endangering Another Person.[2] Appellant proceeded to a non-jury trial on April 12, 2022.

At trial, Victim testified consistently with the above facts. He also testified that he had brass knuckles in his jacket pocket, but that he had not intended to bring them, and did not use them.

Ms. Pehm testified that, despite her intoxication that night, she remembered that she was down the street from Victim when she heard five gunshots in quick succession. She further testified that she had not seen Victim argue or fight with anyone that evening. On redirect examination, she

---

[2] Prior to trial, the Commonwealth *nolle prosed* the Recklessly Endangering Another Person charge.

testified that Ms. Ketter "walks really fast[,]" so Victim was "trying to catch up." *Id.* at 87.

Ms. Ketter also testified and stated, *inter alia*, that she did not know Appellant was walking behind her until he called her name, or how fast he was walking.

Finally, Appellant testified that, while walking that night, he heard an "aggressive, 'yo, yo'" and saw Victim "running towards [him] and screaming at [him]" and "reaching for something [he] viewed as a firearm in that moment" near the lower part of his body. *Id.* at 300-01. Immediately after testifying that Victim was running, Appellant then testified that Victim was "walking fast." *Id.* at 301. Appellant stated that he reached for his firearm "out of fear of [his] life being taken first" and shot Victim. *Id.* at 301.

On April 14, 2022, the court convicted Appellant of both charges. On November 7, 2022, following its review of a presentence investigation report, the court sentenced Appellant to 10 to 20 years' incarceration for the Attempted Murder conviction and a concurrent 7½ to 15 years' incarceration for the Aggravated Assault conviction, with credit for time served. Appellant filed a timely post-sentence motion, which the court denied on January 4, 2023.

**B.**

Following the appointment of appellate counsel, Appellant filed a timely Notice of Appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises three issues for our review:

I. Whether the evidence was sufficient to convict [Appellant] of Criminal Attempt—Homicide and Aggravated Assault, where the Commonwealth failed to disprove, beyond a reasonable doubt, that he acted in self-defense?

II. Whether the evidence was sufficient to convict [Appellant] of Criminal Attempt—Homicide, where the Commonwealth failed to prove, beyond a reasonable doubt, that he had the specific intent to kill?

III. Whether [Appellant's] sentence for Aggravated Assault was illegal as it is a lesser included offense of his conviction for Criminal Attempt—Homicide and the sentences should have been merged?

Appellant's Br. at 5 (suggested answers omitted).

## C.

Appellant first asserts that there was insufficient evidence to convict him of both charges because the Commonwealth failed to disprove, beyond a reasonable doubt, that he acted in self-defense. Appellant's Br. at 18.

"We review claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Miller*, 172 A.3d 632, 640 (Pa. Super. 2017) (citations and internal quotation marks omitted). We may not weigh the evidence and substitute our judgment for that of the fact finder, who is free to believe all, part, or none of the evidence. *Id.* A sufficiency claim challenges whether the

record supports the verdict, not whether the record supports the defendant's assertions. **Commonwealth v. Sinnott**, 30 A.3d 1105, 1110 (Pa. 2011).

When a defendant employs deadly force, the elements of a claim of self-defense are that the defendant (1) reasonably believed that force was necessary to protect himself against death or serious bodily injury; (2) was free from fault in provoking the use of force against him; and (3) did not violate any duty to retreat. **Commonwealth v. Mouzon**, 53 A.3d 738, 740 (Pa. 2012); **see also** 18 Pa.C.S § 505(b)(2) (pertaining to use of deadly force in self-defense). Reasonable belief has both a subjective and objective prong: (1) the defendant "must have acted out of an honest, *bona fide* belief that he was in imminent danger, which involves consideration of the defendant's subjective state of mind[;]" and (2) the defendant's belief that he needed to use deadly force "must be reasonable in light of the facts as they appeared to the defendant, a consideration that involves an objective analysis." **Mouzon**, 53 A.3d at 752 (citation and internal quotation marks omitted).

A defendant does not have a burden to prove self-defense. **Commonwealth v. Torres**, 766 A.2d 342, 345 (Pa. 2001). Rather, once a defendant introduces "some evidence" to justify a finding of self-defense, the Commonwealth bears the burden to disprove self-defense beyond a reasonable doubt. **Id.** The Commonwealth can satisfy its burden by disproving any of the elements of self-defense. **Mouzon**, 53 A.3d at 740-41.

If the defendant's testimony is the only evidence of self-defense, the Commonwealth cannot rely on the fact finder's disbelief of the defendant's

testimony to meet its burden to disprove self-defense. ***Commonwealth v. Smith***, 97 A.3d 782, 788 (Pa. Super. 2014). Rather, the Commonwealth must present evidence from other witnesses to disprove the self-defense claim. ***Id.*** "If there are other witnesses [] who provide accounts of the material facts, it is up to the fact finder to reject or accept all, part or none of the testimony of any witness." ***Id.*** (citation and internal quotation marks omitted). Furthermore, "[t]he complainant can serve as a witness to the incident to refute a self-defense claim." ***Id.***

\*

Appellant maintains that the Commonwealth presented insufficient evidence to disprove that he "honestly and reasonably believed that he was in imminent danger of death or great bodily harm[.]" Appellant's Br. at 23. In support, he asserts that he was "suddenly and aggressively confronted by a person he did not know," and feared that he would be shot, a "not unfounded fear" given Pittsburgh's violent crime statistics. ***Id.*** at 22 n.3. He further asserts that Ms. Pehm and Ms. Ketter agreed that Victim "was running and yelling out" as he approached Appellant, corroborating his testimony that Victim had approached him in a threatening manner. ***Id.*** at 22 (citing N.T. Trial at 84, 109-110, 126).[3] Finally, he maintains that Victim's testimony that

---

[3] In this portion of the transcript, Appellant asked Ms. Pehm on cross examination if Victim was "chasing after" Ms. Ketter, and Ms. Pehm said yes. N.T. Trial at 84. In the remaining portion, Ms. Ketter states on direct examination that Victim had called her name, and on cross examination, she agreed that Victim had said "'Yo, C' or something to that effect[.]" ***Id.*** at 109-110, 126.

- 6 -

he was trying to catch up to Ms. Ketter and had his cell phone in his hand "is irrelevant [] since [Appellant] could not possibly have known why [Victim] was running towards him" and "bears no relevance as to whether [Appellant's] belief that he was about to be shot was an honest one in light of the facts as they appeared to him." *Id.* at 21.

The trial court found Appellant's testimony that he feared for his life not credible. Trial Ct. Op., 6/20/23, at 8. Moreover, it determined that, even if Appellant's testimony were credible, his belief that his life was in danger would not have been reasonable because there was no testimony that Victim exhibited any hostile or aggressive behavior towards Appellant. *Id.* Rather, it found that Victim's credible testimony supported that he was walking quickly with his cell phone in his hand to catch up with Ms. Ketter. *Id.*

After careful review of the record, we agree that Victim's testimony provided sufficient evidence to disprove Appellant's claim of self-defense. The trial court credited Victim's testimony that he was walking quickly and looking at his phone, as well as Ms. Ketter's testimony that Appellant had simply yelled "Yo, C" to get her attention. Trial Ct. Op. at 3-4. Their testimony, viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to disprove Appellant's self-defense claim because it established that Victim was not running, yelling, or otherwise behaving threateningly towards Appellant, such that Appellant's belief that deadly force was necessary may have been reasonable.

Moreover, Appellant relies on his own testimony to support his claim that he had a reasonable belief that deadly force was necessary for self-defense. The trial court, however, found his testimony not credible. Appellant's Br. at 21-22; Trial Ct. Op. at 7. We decline to reweigh the evidence or substitute our credibility determinations for those of the fact finder.

Accordingly, we conclude that Appellant's first claim lacks merit.

**D.**

Appellant next contends that the Commonwealth put forth insufficient evidence to convict him of Attempted Murder because it failed to prove beyond a reasonable doubt that he possessed the specific intent to kill. Appellant's Br. at 24.

Under our Crimes Code, a defendant "commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901(a).

"A person may be convicted of [A]ttempted [M]urder if he takes a substantial step toward the commission of a killing, with the specific intent in mind to commit such an act." **Commonwealth v. Dale**, 836 A.2d 150, 153 (Pa. Super. 2003) (internal quotation marks and citations omitted); 18 Pa.C.S. §§ 901, 2502. Specific intent to kill "may be established solely from circumstantial evidence." **Commonwealth v. Schoff**, 911 A.2d 147, 160 (Pa. Super. 2006). "[T]he law permits the factfinder to infer that one intends the natural and probable consequences of his acts[.]" **Commonwealth v. Gease**, 696 A.2d 130, 133 (Pa. 1997).

In addition, it is well-settled that "specific intent to kill **may** be inferred from the use of a deadly weapon on a vital part of the victim's body." **Commonwealth v. Predmore**, 199 A.3d 925, 931 (Pa. Super. 2018) (citation omitted; emphasis in original). "More specifically, the use of a deadly weapon directed at a vital organ of another human being justifies a factual presumption that the actor intended death unless the testimony contains additional evidence that would demonstrate a contrary intent." **Id.** (citation and internal quotation marks omitted).

\*

Here, Appellant acknowledges the presumption that he possessed a specific intent to kill because he shot Victim in a vital part of his body, but asserts that the evidence shows a contrary intent, *i.e.*, self-defense. Appellant's Br. at 27. Specifically, he maintains that the evidence establishes that he used his lawfully-possessed firearm to defend himself from Victim, who was "coming at him at a fast pace and screaming while reaching for something." **Id.** He also maintains that the lack of an antecedent dispute between him and Victim, who were strangers, indicates that there was no specific intent to kill. **Id.** at 26.

The trial court determined that it was "proper to infer that [Appellant] possessed the specific intent to kill [Victim]" because he shot Victim 5 times— once each in the chest, pelvis, and shoulder, and twice in the back—with a firearm, a deadly weapon. Trial Ct. Op. at 9. We agree with the trial court.

Appellant concedes that he "shot [Victim] several times, including hitting him in vital parts of his body," so the rebuttable presumption of specific intent to kill applies. Appellant's Br. at 27. To attempt to rebut this presumption, he merely recycles his self-defense argument, which the trial court found not credible. *Id.*; Trial Ct. Op. at 8. Appellant essentially asks us to reassess the trial court's credibility determinations, which we will not do. Accordingly, this claim lacks merit.

**E.**

In his final claim, Appellant contends that the trial court erred in imposing separate sentences for Aggravated Assault and Attempted Murder because Aggravated Assault is a lesser-included offense that must merge with Attempted Murder for sentencing purposes.[4] Appellant's Br. at 29. We agree.

A claim that offenses should have merged for sentencing purposes challenges the legality of the sentence. *Commonwealth v. Martinez*, 153 A.3d 1025, 1029–30 (Pa. Super. 2016). Therefore, our well-settled standard of review is *de novo,* and our scope of review is plenary. *Id.*

Section 9765 of the sentencing code establishes that convictions do not merge for sentencing purposes unless

> the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes,

---

[4] Although Appellant raised this issue for the first time in his Pa.R.A.P. 1925(b) statement, challenges to the legality of sentence, including those involving merger, "can never be waived[.]" *Commonwealth v. Tanner*, 61 A.3d 1043, 1046 (Pa. Super. 2013). Accordingly, we will address this claim.

the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S. § 9765. When determining whether multiple convictions resulted from a single criminal act, this Court has held that "[w]hen a criminal act has been committed, broken off, and then resumed, at least two crimes have occurred and sentences may be imposed for each." *Commonwealth v. Wesley*, 860 A.2d 585, 591 (Pa. Super. 2004) (citing *Commonwealth v. Belsar*, 676 A.2d 632, 634 (Pa. 1996) (holding that shooting and kicking victim were separate criminal acts that did not merge for sentencing purposes where appellant paused in between to look for victim's car keys)).

Finally, it is well-established that "every element of aggravated assault is subsumed in the elements of attempted murder." *Commonwealth v. Anderson*, 650 A.2d 20, 24 (Pa. 1994), *decision modified on denial of reargument*, 653 A.2d 615 (Pa. 1994).

\*

Here, Appellant argues that firing 5 shots constituted a single criminal act and that there was "no separate series of shots establishing that 'a criminal act has been committed, broken off, and then resumed.'" Appellant's Reply Br. at 4 (citing *Wesley*, 860 A.2d at 592).

The Commonwealth maintains that "the record allows for a determination" that both convictions "did not arise from a single criminal act." Commonwealth's Br. at 46. It concedes that the acts occurred within a very short period of time, but nonetheless argues that two separate acts occurred: Appellant first shot Victim in the chest, constituting Attempted Murder, and

then continued to shoot him while he was on the ground, separately constituting Aggravated Assault. Commonwealth's Br. at 46.

Based on our review of the trial court's findings of fact and credibility determinations, we do not agree with the Commonwealth's characterization. Ms. Pehm testified that she heard "five (5) shots, one after the other." Trial Ct. Op. at 4 (citing N.T. Trial at 75). In addition, Ms. Pehm testified that she could not recall any pauses between the shots. N.T. Trial at 76. Thus, contrary to the Commonwealth's argument, the trial court's factual findings support Appellant's conclusion that he fired a series of 5 shots in quick succession, thereby comprising one criminal episode and requiring that his convictions for Aggravated Assault and Attempted Murder merge for sentencing purposes.

Accordingly, we vacate Appellant's judgment of sentence for Aggravated Assault. We need not remand for resentencing because vacating Appellant's Aggravated Assault sentence, which was imposed concurrently with his sentence for Attempted Murder, will not disturb the overall sentencing scheme. *See Commonwealth v. Thur*, 906 A.2d 552, 569-70 (Pa. Super. 2006) ("[i]f our disposition upsets the overall sentencing scheme of the trial court, we must remand so that the court can restructure its sentence plan. By contrast, if our decision does not alter the overall scheme, there is no need for a remand.") (citations omitted)).

**F.**

In sum, we conclude that Appellant's first two claims lack merit. Regarding his third claim, we affirm his convictions and vacate his judgment of sentence for Aggravated Assault.

Convictions affirmed. Judgment of sentence imposed for Aggravated Assault, 18 Pa.C.S. § 2702(a)(1), vacated. Judgment of sentence affirmed in all other respects. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 5/16/2024